Entered: July 24th, 2026
Signed: July 24th, 2026

**SO ORDERED**

MICHELLE M. HARNER
U.S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Baltimore**

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Jenk's Best Living, LLC, | * | Case No. 26-17758-MMH |
| | * | |
| Debtor. | * | |
| | * | |
| * * * * * * | * | |
| Jenk's Best Living, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adv. Pro. No. 26-00176-MMH |
| | * | |
| Marc Kulick, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| * * * * * * | * | * * * * * * |

**<u>PRELIMINARY ORDER ADDRESSING MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

A chapter 11 bankruptcy case allows a financially distressed entity an opportunity to reorganize its business operations and financial obligations. Often, the affairs of the debtor are complicated and in disarray, and the Court and the parties need time to work through the issues and ensure a fair and just result for all. The U.S. Bankruptcy Code[1] helps to facilitate this methodical review with the imposition of the automatic stay under section 362 of the Code. In addition, in certain circumstances, the Court may impose protections or temporary injunctions to

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

maintain the status quo and preserve all parties' respective rights and interests pending resolution of disputed matters affecting the bankruptcy estate. As here, multiple parties often are affected by property disputes and the Court's resolution of those matters.

The Court has considered, on a very preliminary basis, the papers filed by the parties and the record of this proceeding to date. The Court understands the dramatically different positions of the debtor/plaintiff and at least one of the defendants. The Court also must evaluate any interests of the debtor/plaintiff's bankruptcy estate. Considering all that, the Court will impose certain restrictions and requirements on the subject defendant's actions with respect to the disputed property pending the parties having a full and fair opportunity to present the issues raised by this proceeding to the Court.

I. Relevant Background

Jenk's Best Living, LLC (the "Plaintiff") filed a chapter 11 case on July 19, 2026. Immediately thereafter, on July 20, 2026, the Plaintiff commenced this adversary proceeding against Marc Kulick, certain of his investment entities, YSA Investments 1, LLC ("YSA"), and Bocaire Tulsa Lender, LLC. ECF 1. The Plaintiff also filed a Motion for Temporary Restraining Order, Preliminary Injunction, and for Expedited Hearing (the "Motion") and requested an emergency hearing on the Motion. ECF 2, 3. YSA filed an opposition to the Motion. ECF 11. The Court held an emergency hearing on the Motion and all related papers on July 22, 2026 (the "Hearing"). ECF 4.

II. Analysis

The immediate issue before the Court is whether the Plaintiff has demonstrated adequate grounds for the Court to impose a temporary injunction or other interim protections pending resolution of the claims and causes of action asserted in this proceeding. The Court must evaluate this issue under Federal Rule of Civil Procedure 65, made applicable to this proceeding by Federal

Rule of Bankruptcy Rule 7065. In that context, the Plaintiff bears the heavy burden of establishing that it is likely to succeed on the merits, likely to suffer irreparable harm absent relief, that the balance of equities favors an injunction, and that the injunction serves the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009).[2]

At this very early stage of this proceeding, the Court endeavors to evaluate what has been presented thus far and determine whether protections are needed to maintain the status quo pending a resolution on the merits. As the Court and the parties discussed at the Hearing, one challenge in this proceeding is exactly what is meant by the term "status quo" and how the Court best preserves that status quo for all parties in interest. The Court addresses this issue, among others, below.

The Court acknowledges that it is not the first or the only court confronting at least some of the basic facts underlying the dispute before it. Mr. Kulick and YSA were (and, with the Plaintiff, still may be) involved in litigation before the Delaware Chancery Court, and Mr. Kulick and certain of his investment entities are involved in bankruptcy cases in other districts. Moreover, the Delaware Chancery Court has issued an opinion addressing certain issues that may impact those before the Court.

The Plaintiff argues that it and its creditors have been harmed by the conduct of Mr. Kulick and YSA. More specifically with respect to the Motion, the Plaintiff asserts that YSA has taken,

---

[2] According to the U.S. Supreme Court, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also In re Chicora Life Ctr., LC*, 553 B.R. 61, 64 (D.S.C. 2016); *Moore v. Kempthorne*, 464 F. Supp.2d 519, 525 (E.D. Va. 2006). Courts considering preliminary injunctions in the context of bankruptcy cases generally rely on case law and a bankruptcy court's equitable powers under section 105 of the Code.[2] Notably, the Court's section 105 powers are not unlimited but may be used in furtherance of the Code's statutory provisions. *See, e.g., Law v. Siegel*, 571 U.S. 415, 421 (2014).[2] In addition, Rule 65 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7065, provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65; Fed. R. Bankr. P. 7065.

and is taking, actions directly adverse and prejudicial to its interests, which in turn are property interests of the bankruptcy estate. The Plaintiff relies heavily on the provisions of its Operating Agreement, declarations by Mr. Kulick and Mr. Spatz, and the recent actions of YSA affecting the subject property. YSA counters that the Delaware Chancery Court already determined its rights and interests in, among other things, the subject property, leaving nothing for this Court to resolve.

As the Court noted at the Hearing, the Court has great respect for the decisions and the jurisdiction of the state (and other federal) courts and must have appropriate time to review the relevant facts and circumstances underlying their decisions or the matters currently pending before them. The Court also is focused on, as it must be, the bankruptcy estate before it and the impact of this proceeding on the estate and its creditors. For present purposes, however, the Court considers whether any of the Plaintiff's claims or causes of action warrant temporary protections for the estate.[3]

The Court has reviewed the papers filed by the parties and their statements at the Hearing. These papers include documents that describe the incurrence of obligations and the transfer of interests in property, some of which purport to impact the Plaintiff or its asserted property interests within the two years prior to the filing of the Plaintiff's bankruptcy case. ECF 10, 12. The Plaintiff, for example, references an October 2025, Mortgage, Assignment of Rents and Leases, Security Agreement, and Fixture Filing (the "Mortgage"), and a June 2026 Special Warranty Deed (together with the Mortgage, the "Mortgage Documents") that appear to affect property in which the Plaintiff asserts an interest. ECF 1, 10. The Plaintiff focuses on the loss of this property and asserts that it received no loan proceeds or other value from these transfers and that, if given effect, they rendered

[3] Because the Court finds, on a preliminary basis, adequate grounds to support some relief for the bankruptcy estate under the Motion in the context of the fraudulent transfer claims under section 548 of the Code, it does not address herein the other claims and causes of action. The Court will consider all claims and causes of action and further (and more fully) consider the fraudulent transfer claims in due course in this adversary proceeding.

the Plaintiff insolvent. The Defendant posits certain defenses to these claims but again, for purposes of the Motion, the Court focuses on the papers submitted by the parties and the applicable law.[4]

Without addressing the parties' other respective arguments, the Court finds that the foregoing basic facts show that the Plaintiff has demonstrated a likelihood of prevailing on its fraudulent transfer claims under section 548 of the Code.[5] The Plaintiff's lack of control over the property, moreover, subjects the Plaintiff and its bankruptcy estate to irreparable harm. Indeed, to the extent that YSA further transfers the property or takes action that negatively impacts the value of the property, the Plaintiff may be unable to fully recoup the value of its lost business operations

---

[4] The parties agreed that the Court could consider their respective exhibits for purposes of the Motion, reserving all rights concerning whether those exhibits ultimately would be admissible at a further evidentiary hearing or trial.

[5] Section 548 of the Code allows a debtor in possession or trustee to seek to avoid certain obligations incurred, or property transferred, within the two years prior to the bankruptcy petition date. *See* 11 U.S.C. § 548(a) provides in relevant part that:

> (1)The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548. *See also In re Ballantyne Brands, LLC*, 656 B.R. 117, 141 (Bankr. W.D.N.C. 2023) ("The purpose of fraudulent transfer law is the preservation of the debtor's estate for the benefit of its unsecured creditors. *Harman v. First Am. Bank of Md. (In re Jeffery Bigelow Design Grp., Inc.)*, 956 F.2d 479, 484 (4th Cir. 1992) (emphasis removed) (quoting Jack F. Williams, *Revisiting the Proper Limits of Fraudulent Transfer Law*, 8 Bankr. Dev. J. 55, 80 (1991)). Accordingly, our focus is on 'the consideration received by the debtor, not on the value given by the transferee.' *Id.* Thus, the question of reasonably equivalent value is essentially, '"whether, as a result of the transaction, the debtor's estate was unfairly diminished."'") (some internal citations omitted); *see also In re Morris Comm's NC, Inc.*, 914 F.2d 458, 466–467 (4th Cir. 1990) (discussing, in detail, the requisite analysis under section 548(a)).

(which are premised on the subject property) should this proceeding be resolved in its favor. The record thus supports the first two factors of the Civil Rule 65 analysis.

The third and fourth factors are a closer matter for the Court, given the yet unresolved meaning of the Delaware Chancery Court's decision and potential grounds for YSA's actions under that decision. The Court notes that the Delaware Chancery Court decision may not, in the end, affect the merits of a fraudulent transfer action under section 548 of the Code, but at this early stage and on an interim basis, the Court feels compelled to recognize and respect a decision of that Court.

As such, the Court finds that the Plaintiff has met the last two factors of the Civil Rule 65 analysis, but on a limited basis. The purpose of a chapter 11 case and the objectives of chapter 5 of the Code support balancing the equities in favor of the Plaintiff. Likewise, ensuring that parties respect the Code and the breathing spell of section 362 and the other protections provided to a debtor and its creditors are key policies of the Code that benefit not only the debtor and its creditors but also the general public. Indeed, bankruptcy itself serves important public policies, and the integrity of the system must be preserved.

That said, and again balancing the rights and interests of the Plaintiff and YSA given the record currently before the Court, the Court will tailor the protections it provides the Plaintiff (and in turn the bankruptcy estate) pending resolution of the requested relief. This brings the Court back to the earlier point concerning what it means to maintain the status quo.

The Court acknowledges the Plaintiff's argument that the status quo should reflect the state of the Debtor's organizational structure and property management as of the petition date. The Court also, however, strives to balance that with YSA's arguments under the Delaware Chancery Court's decision and to preserve the value of the real property to the greatest extent possible—for the benefit of all parties. The Court thus will focus on maintaining the status quo condition of the

Case 26-00176 Doc 21 Filed 07/24/26 Page 7 of 9

property by, among other things, requiring YSA to invest all rents and proceeds derived from the property to the operation, upkeep, and maintenance of the property; provide accountings on a regular basis with respect thereto; and to otherwise take no actions affecting the property or any limited liability entity (or whatever entity) that currently owns the property, including no transfers, assignments, sales, encumbrances, or any other action or agreement that could in any way affect the subject property or the status quo in this proceeding, without first seeking and obtaining relief from this Court.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the Motion is granted on a limited basis on the terms and subject to the conditions set forth herein; and it is further

**ORDERED**, that YSA shall take all steps reasonably necessary to maintain the property commonly known as 204 S. Riverfront Drive, Jenks, OK 74037 and including that described in the Mortgage Documents (the "Property"), as well as preserve the interests in any entity that asserts an ownership interest in all or part of the Property (an "Owner Entity"); and it is further

**ORDERED**, that YSA shall collect in accordance with applicable law and use/apply/reinvest all rents and other proceeds and value derived from or in any way relating to the Property to the ongoing maintenance, upkeep, operation, and preservation of the Property; to the extent that excess proceeds exist, YSA shall hold those proceeds in a separate reserve account pending further Order of this Court; and it is further

**ORDERED**, that YSA shall file an accounting of all proceeds or value derived from or related to the Property and a summary of the condition of the Property with the Court on or before July 30, 2026, August 13, 2026, August 27, 2026, and September 10, 2026; YSA may request that the Court restrict access to such documents to the extent they contain confidential or proprietary information; and it is further

**ORDERED**, that YSA shall not take any actions or enter into any agreements that may affect the Property or an Owner Entity; this restriction includes (without limitation) that YSA shall not sell, assign, transfer, encumber, pledge, or destroy the Property, an Owner Entity, or any property or assets in any way related thereto (and shall not allow or authorize any person subject to its control or acting on its behalf to do the same); and it is further

**ORDERED**, that YSA shall not agree to the Property or an Owner Entity becoming subject to any voluntary or involuntary action or proceeding—whether through contract, document, instrument, or possession, or before a court, agency, administrative body, tribunal, similar forum, or other entity or person—and shall immediately notify the Plaintiff, the other Defendants, and the Court within one business day of any such attempted action or proceeding against the Property or an Owner Entity; and it is further

**ORDERED**, that YSA may for good cause seek relief from, or modification to, the terms of this Preliminary Order by filing a motion requesting such relief, which the Court will endeavor to hear on an expedited basis; and it is further

**ORDERED**, that the Court will hold a status hearing on the documents filed in accordance with this Preliminary Order **on September 24, 2026, at 11:00 a.m., ET, by videoconference**; the Court will enter the protocols governing the hearing separately on the docket; and it is further

**ORDERED**, that the Court will by separate Order set an appropriate schedule for any further hearings and/or the trial in this proceeding; and it is further

**ORDERED**, that the Plaintiff, YSA, or any Defendant may file a Line with the Court requesting an expedited hearing on any matter addressed by this Preliminary Order and the Court will set such matter for hearing as soon as reasonably practicable; and it is further

**ORDERED**, that, pursuant to Federal Rule of Bankruptcy Procedure 7065, the Plaintiff is relieved from posting a security pursuant to Federal Rule of Civil Procedure 65(c); and it is further

**ORDERED**, that the Plaintiff shall be responsible for providing notice of this Preliminary Order under Federal Rule of Civil Procedure 65(d)(2) which is incorporated by Federal Rule of Bankruptcy Procedure 7065.

cc: All parties
All counsel

**END OF ORDER**